UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.:11-CV-81292-RYSKAMP/HOPKINS

STEVEN SIEGLER, individually, and
on behalf of all others similarly situated,

    Plaintiff,

v.

BEST BUY CO. OF MINNESOTA, INC.,
a Minisota Corporation, d/b/a BEST BUY
CO., INC.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT

**THIS CAUSE** comes before the Court upon Defendant Best Buy Co., Inc.'s ("Best Buy") motion to dismiss complaint **[DE 11]** filed on January 20, 2012. Plaintiff Steven Siegler filed a response in opposition **[DE 16]** on February 21, 2012. Defendant replied **[DE 17]** on February 28, 2012. This matter is ripe for adjudication.

**I.**    **Background**

Plaintiff purchased a computer mouse from a Best Buy store on October 19, 2011. Prior to the purchase, Plaintiff alleges he was unaware of Best Buy's return policy, however, he admits that the policy was disclosed on the transaction receipt that Best Buy provided at the time of purchase. The pertinent portion of the policy reads:

> Best Buy tracks exchanges and returns on an individual level. When you exchange or return an item, we require a valid form of ID (see below). Some of the information from your ID may be stored in a secure, encrypted database of customer activity that Best Buy and its affiliates use to track exchanges and returns.

1

> Valid forms of ID accepted are: U.S., Canadian, or Mexican Driver's License, U.S. State ID, Canadian Province ID, U.S. Military ID or Passport.[1]

The following day, Plaintiff revisited Best Buy to return the mouse. In addition to the product, receipt, and credit card, Best Buy requested Plaintiff's driver's license pursuant to the return policy quoted *supra*. Plaintiff voluntarily presented his license to the Best Buy cashier, thereby disclosing his name, address, birthdate, photograph, and driver's license number. Best Buy then allegedly "swiped" the license "without notice or warning," **[DE 1 ¶ 11]**, in order to store the information located on the license's magnetic strip. Plaintiff demanded that the transaction be reversed and his information deleted, but Best Buy refused, informing Plaintiff it was unable to do so.

Plaintiff now asserts a claim under the Drivers' Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721-25, specifically § 2724(a), *see* **[DE 16]** at 4, arising from the above allegations, on behalf of himself and a national class of similarly situated persons.

## II.     Legal Standard on Motion to Dismiss

In order to state a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." When considering a motion to dismiss, the court must accept all of the plaintiff's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [him]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

---

[1] Compl. Ex. A.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

### III. Discussion

Plaintiff fails to state a claim for which relief can be granted because, even presuming Plaintiff's allegations are true, Defendant would not be liable under the DPPA.

The DPPA begins by generally prohibiting a state Department of Motor Vehicles ("DMV") – not private parties – from disclosing "personal information." § 2721(a). Specifically, the statute provides that "[a] state department of motor vehicles, and any officer, employee, or contractor, thereof, shall not knowingly disclose or otherwise make available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record." *Id.* Here, Plaintiff asserts that Defendant violated § 2724(a), which provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." For this claim to succeed, Plaintiff's driver's license must be a "motor vehicle record." Section 2725(1) defines "motor vehicle

record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."

A canon of statutory interpretation is that "[a] statute should be construed so that . . . no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) (internal quotation marks omitted). Plaintiff's argument that a driver's license is a motor vehicle record creates a circularity that renders the statutory definition superfluous. Classifying a driver's license as a motor vehicle record necessarily means that operator's permits, vehicle titles, vehicle registrations, and other forms of identification issued by a DMV are also motor vehicle records. Accordingly, a definition that specifies which documents constitute a "motor vehicle record" would serve no purpose. Furthermore, because the record must "pertain to" the driver's license, the "record" must be different than the license. Therefore, this Court finds that a driver's license is a not a motor vehicle record as defined under § 2725(1).

Moreover, even if Plaintiff's driver's license is considered a "motor vehicle record," the fact that Defendant obtained its information from the Plaintiff, rather than Florida's Department of Highway Safety and Motor Vehicles, places the Defendant's conduct outside the scope the DPPA's protections.

The plain language of the DPPA suggests that it seeks to protect against disclosure of information obtained directly from state DMVs. The title of the statute, "Prohibition on release and use of certain personal information from State motor vehicle records," indicates that the statute prohibits the disclosure of information retained by a state entity. Furthermore, the language of § 2721(a), which protects against disclosures by the "[s]tate department of motor vehicles, and any officer, employee, or contractor thereof," indicates that the purpose of the

statute is to safeguard information retained by the DMV. Court decisions support this reading of the DPPA. The Supreme Court stated:

> [The DPPA] establishes a regulatory scheme that restricts the *States*' ability to disclose a driver's personal information without the driver's consent. The DPPA generally prohibits any *state DMV, or officer, employee, or contractor* thereof, from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record."

*Reno v. Condon*, 528 U.S. 141, 144 (2000) (emphasis added) (quoting 18 U.S.C. § 2721(a)). The Court went on to note that the "DPPA's provisions do not apply solely to States," but also to "private persons who have obtained that information *from a state DMV*." *Id.* at 146 (emphasis added) (citing § 2721(c)); *see also Ocasio v. Riverbay Corp.*, No. 06 Civ. 6455, 2007 U.S. Dist. LEXIS 44751, at *5 (S.D.N.Y. June 19, 2007) (adopting Magistrate Judge's recommendation to dismiss DPPA claim, found at 2006 U.S. Dist. LEXIS 93104, at *10-13 (S.D.N.Y. Dec. 20, 2006) ("Where . . . a defendant does not obtain a plaintiff's 'personal information' from a state motor vehicle agency, but instead, obtains that information directly from the plaintiff, any subsequent disclosure of that 'personal information' is not a DPPA violation.")); *Figueroa v. Taylor*, No. 06 Civ. 3676, 2006 U.S. Dist. LEXIS 76957, at *2 (S.D.N.Y. Oct. 23, 2006) (adopting Magistrate Judge's recommendation to dismiss DPPA claim, found at 2006 U.S. Dist. LEXIS 85174, at *8-10 (S.D.N.Y. Sept. 15, 2006) ("DPPA was enacted to regulate the disclosure and use of personal information obtained from a state DMV . . . .")); *Mattivi v. Russell*, No. 01-WM-533, 2002 U.S. Dist. LEXIS 24409, at *13 (D. Colo. Aug. 2, 2002) (stating that an official accident report containing a driver's license number is not a "motor vehicle record" under the DPPA because it was not issued by a DMV); *O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933, 934 (N.D. Ill. 2002) (holding that a nightclub's videotaping of a driver's license does not violate the DPPA).

5

Additionally, accepting Plaintiff's assertion that a driver's license is a motor vehicle record **[DE 1 ¶ 36]** would be inconsistent with the canon of statutory interpretation that dictates that statutes should be construed to avoid absurd results. *Durr v. Shinseki*, 638 F.3d 1342, 1350 (11th Cir. 2011). It is anticipated that businesses will request a driver's license and occasionally retain information from that license. *See, e.g.*, Fla. Stat. § 117.05(5)(b)(2)(a) (notary public may rely on driver's license in authenticating signature); § 537.014 (borrower may present identification in order to reclaim loan property); § 538.32(2)(b) (mail-in secondhand precious metals dealers must collect and retain seller's driver's license number); § 539.001(8)(b)(5), (9)(1) (pawn brokers to maintain form that lists the type of identification provided by the customer as well as its issuing agency and identification number); § 560.310(1)(b)(1) (check cashers must maintain copy of customer's photographic identification, which may be a driver's license); § 570.55(4) (sellers of tropical fruits must document their driver's license number or provide other acceptable means of identification, and buyer must maintain that document for at least one year). Plaintiff's interpretation of the DPPA would impose a liability of $2,500 per customer on these (and other) businesses because none of these businesses use the information as specifically permitted by the DPPA. This is an assuredly absurd result given the conflict it creates with state statutes requiring the display of driver's licenses and retention of the information they contain, as well as the high financial costs implicated by such an interpretation.

The DPPA's legislative history also indicates that the statute is limited to prohibiting the disclosure (or redisclosure) of information by the DMV. The House sponsor of the bill, Representative James Moran, explained that the DPPA's primary purpose is to regulate DMVs:

> This bill will prohibit motor vehicle departments (DMV) [sic] from disclosing personal information (name, address, telephone number, social security number, driver's identification number, medical and disability information, photograph) about a licensee unless there is a specific, approved reason for doing so.

Statement of Congressman James P. Moran before the Subcomm. on Civil and Constitutional Rights of the H. Comm. on the Judiciary on H.R. 3365, The Driver's Privacy Protection Act of 1993, 103rd Cong. (1994).  Senator Boxer described the problem addressed by the DPPA as arising when "someone can find your name or see your car, go to the DMV and obtain the very personal information that you may have taken painful steps to restrict."  139 Cong. Rec. 29,466 (1993).  Senator Robb stated that the DPPA "would place safeguards on the privacy of the driver and vehicle owners by prohibiting release of personal information to anyone without a specific business-related or government related reason for obtaining the information."  139 Cong. Rec. 29,469 (1993).  And Senator Biden explained that the DPPA balances privacy against state sunshine laws, by which private persons can obtain public information:

> [P]otential criminals are able to obtain private, personal information about their victims simply by making a request. These open-record policies in many States are open invitations to would-be stalkers. [¶] In my view, this amendment makes common sense. Americans do not believe they should relinquish their legitimate expectations of privacy simply by obtaining drivers' licenses or registering their cars. Yet the laws of some States do just that by routinely providing this identifying information to all who request it.

139 Cong. Rec. 29,470 (1993).

The text of the DPPA, the decisions interpreting the statute, and the statute's legislative history makes clear that liability under the DPPA occurs upon receipt and disclosure of information from a state DMV only.  Thus, Plaintiff has no DPPA claim.

**IV.   Conclusion**

The Court has carefully considered the motions, responses, replies, applicable law, and pertinent portions of the record.  For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Best Buy's motion to dismiss **[DE 11]** is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**. Final judgment shall be entered by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 12th day of June, 2012.

S/Kenneth L. Ryskamp<br>
KENNETH L. RYSKAMP<br>
UNITED STATES DISTRICT JUDGE